**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. 1:25-cr-00202-RJL** |
| | * | |
| **BAZILE RICHARDSON,** | * | |
| | * | |
| **Defendant** | * | |
| | ******* | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS INDICTMENT FOR IMPROPER VENUE**

Respectfully submitted,

/s/ Stuart A. Berman
Stuart A. Berman (Bar No. 975135)
Lerch, Early & Brewer, Chtd.
7600 Wisconsin Avenue
Suite 700
Bethesda, MD 20814
(301) 657-0729
saberman@lerchearly.com
*Counsel for Defendant Bazile Richardson*

Dated: October 5, 2026

## TABLE OF CONTENTS


TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ........................................................ ii-v

INTRODUCTION ........................................................ 1

FACTUAL BACKGROUND ........................................................ 4

I. THE IEEPA/OFAC REGULATORY STRUCTURE ........................................ 4

II. THE INDICTMENT ........................................................ 5

ARGUMENT ........................................................ 7

I. THE DISTRICT OF COLUMBIA IS NOT A PROPER VENUE FOR PROSECUTION OF THE CHARGED IEEPA CONSPIRACY ........................ 7

A. The Government Bears the Burden of Establishing That Venue Is Proper ........................................ 7

B. The Indictment Does Not Allege an Essential Conduct Element in This District ........................................ 8

C. IEEPA Does Not Criminalize Failure to Obtain an OFAC License – It Criminalizes Engaging in Other Conduct Without Having Previously Obtained a License ........................................ 10

D. A Defendant's Status as a Person Lacking an OFAC License Is a Circumstance Element That Does Not Create a Venue ........................ 14

E. Recent Supreme Court Decisions Confirm That Prosecuting Richardson in This District Is Improper ........................................ 17

# TABLE OF AUTHORITIES

**Cases**

* *Abouammo v. United States,* 608 U.S. 597 (2026) ........................................................ *passim*

*Anderson v. United States*, 328 U.S. 699 (1946) ..............................................................11

*Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728 (D.C. Cir. 2007) ........................................4

* *Invs. Funding Corp. of New York v. Jones*, 495 F.2d 1000 (D.C. Cir. 1974).......................13, 14

* *Johnston v. United States*, 351 U.S. 215 (1956) ..........................................................11, 12, 14

* *Nichols v. United States,* 578 U.S. 104 (2016) ............................................................... *passim*

*Rumely v. McCarthy*, 250 U.S. 283 (1919).........................................................................11

*Smith v. United States*, 599 U.S. 236 (2023) .......................................................................18

*Travis v. Unites States*, 364 U.S. 631 (1961)........................................................................11

* *United States v. Auernheimer*, 748 F.3d 525 (3d Cir. 2014) ..................................................8, 9

*United States v. Ayon-Brito*, 981 F.3d 265 (4th Cir. 2020) .........................................................15

*United States v. Ballestas*, 795 F.3d 138 (D.C. Cir. 2015) ..........................................................7

*United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181 (2d Cir. 1989)................................10

*United States v. Bowens*, 224 F.3d 301 (4th Cir. 2000).........................................................8, 16

*United States v. Bowman*, 137 F. Supp. 385 (D.D.C. 1957).......................................................16

*United States v. Brennan*, 452 F. Supp. 225 (E.D. Pa. 2020) ........................................................9

* *United States v. Cabrales*, 524 U.S. 1, 7 (1998)..................................................................1, 15

*United States v. Cores,* 356 U.S. 405 (1958)......................................................................3, 19

*United States v. Fortenberry,* 89 F.4th 702 (9th Cir. 2023) ..................................................3, 17

*United States v. Gamble*, 202 WL 2605829, at 4 (D.D.C. July 2, 2020)........................................8

*United States v. Hassanshahi*, 185 F. Supp. 3d 55 (D.D.C. 2016) ..........12

*United States v. Hernandez*, 189 F.3d 785 (9th Cir. 1999) ..........15

*United States v. Holcombe*, 883 F.3d 12 (2d Cir. 2018) ..........9

*United States v. Jin*, 2025 WL 2409749, at **20-21 (D.D.C. Aug. 19, 2025) ..........12, 13, 14

* *United States v. Johnson,* 323 U.S. 273 (1944) ..........2

*United States v. Lombardo*, 241 U.S. 73 (1916) ..........11, 12, 14

*United States v. Lanoue*, 137 F.3d 656 (1st Cir. 1998) ..........14

*United States. v. Magruder*, 126 F.4th 671 (D.C. Cir. 2025) ..........8

*United States v. Mink*, 9 F.4th 590 (8th Cir. 2021) ..........8

*United States v. Montgomery*, 441 F. Supp. 2d 58 (D.D.C. 2006) ..........14

*United States v. Morgan,* 393 F.3d 192 (D.C. Cir. 2004) ..........3, 8

*United States v. Mosby,* 143 F.4th 264 (4th Cir. 2025) ..........2, 9

*United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020) ..........9

*United States v. Ramirez*, 430 F.3d 144 ..........9

* *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999) ..........1, 8, 12

*United States v. Sterling*, 860 F.3d 233 (4th Cir. 2017) ..........9

*United States v. Strain*, 396 F.3d 689 (5th Cir. 2005) ..........9, 16

*United States v. Swann*, 441 F.2d 1054 (D.C. Cir. 1971) ..........8

*United States v. Toomey*, 404 F.Supp. 1377 (S.D.N.Y. 1975) ..........16

*United States v. Tzolov*, 624 F.3d 314 (2d Cir. 2011) ..........10

*United States v. White*, 887 F.2d 267 (D.C. Cir. 1989) ..........8

*Whitfield v. United States*, 543 U.S. 209 (2005) ..........8

**Constitutional Provisions and Statutes**

U.S. Const. art. III, § 2, cl.3 ........................................................ 1, 7

U.S. Const. amend. VI ........................................................ 1, 7

8 U.S.C. § 1326(a) ........................................................ 15

15 U.S.C. § 78aa ........................................................ 10, 13

15 U.S.C. § 78ff(a) ........................................................ 14

15 U.S.C. § 78m(a) ........................................................ 14

15 U.S.C. § 78o(a) ........................................................ 14

18 U.S.C. § 793(e) ........................................................ 9

18 U.S.C. § 842 ........................................................ 17

18 U.S.C. § 922(a)(1) ........................................................ 17

18 U.S.C. § 922(g)(1) ........................................................ 15

18 U.S.C. § 922(g)(4) ........................................................ 14

18 U.S.C. § 922(g)(6) ........................................................ 14

18 U.S.C. § 922(g)(8) ........................................................ 14

18 U.S.C. § 922(g)(9) ........................................................ 14

18 U.S.C. § 1071 ........................................................ 10, 16

18 U.S.C. § 1519 ........................................................ 18

18 U.S.C. § 2442(a) ........................................................ 10

18 U.S.C. § 2250(a)(3) ........................................................ 18

50 U.S.C. § 1601 ........................................................ 4

50 U.S.C. § 1701 ........................................................ 4

50 U.S.C. § 1701(a) ....................................................................................................4

50 U.S.C. § 1705(a) ....................................................................................................5

50 U.S.C. § 1705(b) ....................................................................................................19

50 U.S.C. § 1705(c) ....................................................................................................5

**Regulations**

31 C.F.R. § 589.201(b) ....................................................................................................4

**Rules**

Fed. R. Crim. P. 12(b)(3) ....................................................................................................3

Fed. R. Crim. P. 12(b)(3)(B) ....................................................................................................7

Fed. R. Crim. P. 18 .................................................................................................... 1, 7-8

## INTRODUCTION

The Constitution and Federal Rules of Criminal Procedure are unequivocal in their command that crimes be prosecuted where they were committed. The Venue Clause in Article III provides in pertinent part that "[t]rial shall be held in the State where the said Crimes shall have been committed…" U.S. Const. art. III, § 2, cl. 3. The Vicinage Clause of the Sixth Amendment requires trial "by an impartial jury of the State and district wherein the crime shall have been committed…." U.S. Const. amend. VI. And Fed. R. Crim. P. 18 provides that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."

To determine whether an indictment satisfies these venue requirements, the Court "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). A crime is "committed," for venue purposes, where its "essential conduct elements" are completed. *Id.* at 280–81. Not every element of an offense is an essential conduct element. To determine which elements involve essential conduct, courts must consider both the "verbs of the statute" and any other elements that the government must prove to obtain a conviction. *See id.* at 280. Courts must distinguish "conduct elements," which are the "critical part[s]" of an offense involving the defendant's own conduct that support venue, from mere "circumstance elements," which do not support venue and may involve conduct begun and completed by others or acts by the defendant that were merely preparatory to the offense and not part of it. *See id.* at 280 n.4 (citing *United States v. Cabrales*, 524 U.S. 1, 7 (1998)). The *locus*

*delicti* of a nonessential element cannot give rise to venue, because no criminal conduct has yet occurred. *United States v. Mosby,* 143 F.4th 264, 280 (4th Cir. 2025); *United States v. Ramirez,* 420 F.3d 134, 140-41 (2d Cir. 2005).

A defendant's conduct may support venue in one of two ways. One is active: the defendant or an accomplice or co-conspirator may affirmatively engage in conduct. The second is passive: the law affirmatively criminalizes failure to perform a required act in a district, and the defendant fails to comply. The indictment in this case does not allege either form of conduct. It does not allege that defendant Bazile Richardson (a resident of North Carolina), his co-defendant (a resident of Haiti), or his co-conspirators (residents of North Carolina, Haiti, New York, and Massachusetts) engaged in any conduct in the District of Columbia. And it does not allege that any of them failed to perform an act that they were affirmatively required by law to perform in the District of Columbia. It merely alleges that they engaged in conduct elsewhere without possessing a license that they could have obtained — but were not affirmatively required by a criminal statute to obtain — in the District of Columbia.

In *United States v. Johnson,* 323 U.S. 273 (1944), the Supreme Court held that overly broad constructions of venue provisions "not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution." *Id.* at 275. Because "[t]hese are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests," *Johnson* mandated restrictive construction of venue provisions: "[i]f an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage

to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." *Id.* at 276. *See also United States v. Cores,* 356 U.S. 405, 407 (1958) ("The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place"); *United States v. Morgan,* 393 F.3d 192, 196, 201 (D.C. Cir. 2004). It may be convenient for the Department of Justice to charge Richardson in the district where the Department of Justice, National Security Division and Department of the Treasury, Office of Foreign Assets Control ("OFAC") are both located, rather than in a district where the conduct constituting the charged offense actually occurred. But that is not sufficient to satisfy the Constitution. "The Venue and Vicinage Clauses may not be disregarded simply because it suits the convenience of federal prosecutors." *United States v. Fortenberry,* 89 F.4th 702, 709 (9th Cir. 2023).

Recent Supreme Court decisions reaffirm the impropriety of prosecuting a defendant where no essential conduct occurred and further undermine the government's attempts to manufacture venue in this District. *Nichols v. United States,* 578 U.S. 104 (2016), held that a sex offender could not be charged with failing to register as an offender in a district where he did not live and was not required to register. And just this year, in *Abouammo v. United States,* 608 U.S. 597 (2026), the Court ruled unanimously that charges may only be brought in a district where the proscribed conduct occurred, not where an investigation is located or effects of the conduct might be felt. The indictment does not allege that Richardson was required to do anything in the District of Columbia or engaged in proscribed conduct here.

For these reasons and those discussed in greater detail below, the Court, pursuant to Fed. R. Crim. P. 12(b)(3), should dismiss the indictment without prejudice.

## FACTUAL BACKGROUND

### I. THE IEEPA/OFAC REGULATORY STRUCTURE

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, grants the President certain powers upon his declaration of a national emergency under the National Emergency Act, 50 U.S.C. §§ 1601 *et seq.*, with respect to "any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a). When the President declares such an emergency, these measures may include "regulat[ing]" or "prohibit[ing] ... any transactions in foreign exchange ... by any person, or with respect to any property, subject to the jurisdiction of the United States." *Id.* § 1702(a)(1)(A). They may also include "prevent[ing] or prohibit[ing], any ... transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." *Id.* § 1702(a)(1)(B). In other words, IEEPA "authorizes the blocking of property" of foreign nationals and entities when the property is subject to the jurisdiction of the United States. *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 735 (D.C. Cir. 2007).

Persons designated under IEEPA are placed on the Specially Designated Nationals and Blocked Persons List ("SDN List"), which is maintained by OFAC. Once OFAC identifies a person as an SDN, it was unlawful for any person to "mak[e] any contribution or provision of funds, goods, or services by, to, or for the benefit of" such a person, or to "recei[ve] any contribution or provision of funds, goods, or services" from that person. 31 C.F.R. § 589.201(b).

Anyone who interacts with a designated person in a prohibited manner is subject to penalties under IEEPA. Most OFAC penalties are civil fines. Under 50 U.S.C. § 1705(a), "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter." Section 1705(b) specifies available civil penalties. A criminal provision, 50 U.S.C. § 1705(c), provides that "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) shall, upon conviction, be fined not more than $1,000,000, or if a natural person, may be imprisoned for not more than 20 years, or both." IEEPA does not criminalize the mere failure to obtain a required license in the District of Columbia. IEEPA does not contain a venue provision.

## II. THE INDICTMENT

The one-count indictment charges Richardson with conspiring with co-defendant Jimmy Cherizier and others to violate and cause violations of sanctions that OFAC imposed upon Cherizier. It does not charge Richardson with committing any substantive IEEPA offense or any other crime. The indictment alleges that Cherizier is a Haitian national residing in Haiti. ¶¶ 2, 14. It alleges that Richardson is a naturalized U.S. citizen from Haiti who resides in Fayetteville, North Carolina, ¶¶ 3, 15, and identifies seven other domestic and Haitian co-conspirators live in New York and Massachusetts, respectively. ¶¶ 16-22. It further alleges that Cherizier helped to found a gang alliance Viv Ansanm, which the State Department designated as a Foreign Terrorist Organization. ¶ 2. It alleges that on December 10, 2020, OFAC sanctioned Cherizier personally and designated him as an SDN. ¶¶ 4, 13. The indictment then lays out the statutory and regulatory regime governing sanctions under IEEPA.

The indictment alleges that Cherizier and Richardson "knowingly and willfully conspired" to violate and cause violations of U.S. sanctions, ¶ 1, and in the charging paragraph (¶ 26) alleges that:

> Beginning on or about December 10, 2020, and continuing through at least in or around January 2025, in the District of Columbia and elsewhere, CHERIZIER, RICHARDSON, and others known and unknown to the grand jury knowingly and willfully conspired:
>
> a. to provide, and cause U.S. persons, including U.S. financial institutions, to provide, goods, funds; and services to and for the benefit of CHERIZIER, a Specially Designated National whose property and interests in property were blocked pursuant to EO 13818, without first having obtained the required license from OFAC, in violation of Title 50, United States Code, Section 1705; EO 13818; and Title 31, Code of Federal Regulations, Section 583.201; and
>
> b. to engage in transactions that evade and have the purpose of evading the prohibitions set forth in EO 13818, and Title 31, Code of Federal Regulations, Section 583.205(a), in violation of Title 50, United States Code, Section 1705.

The indictment mentions the District of Columbia just twice. It charges Richardson, a naturalized U.S. citizen from Haiti who resides in Fayetteville, North Carolina, ¶¶ 3, 15, with conspiring with Cherizier, a Haitian national residing in Haiti. ¶¶ 2, 14; with two U.S. co-conspirators live in New York and Massachusetts, ¶¶ 16-17; with four Haitian co-conspirators live in Haiti, ¶¶ 18, 20-22; and with a fifth Haitian co-conspirator who lived in Haiti until the first half of 2024 and now lives in North Carolina. ¶ 19. The indictment does not allege that any conspirator did anything in the District of Columbia or violated a criminal law by failing to perform an act required to be done in this District. With regard to the allegation in ¶ 26a, the background allegation in ¶ 7 asserts that "[a]t no time did CHERIZIER, RICHARDSON, or any of their known co-conspirators apply for or obtain a license from OFAC,

which is located in the District of Columbia, to permit U.S. persons to provide funds, goods, and services to, and for the benefit of, CHERIZIER," and ¶ 29kk, which purports to describe an overt act in furtherance of the charged conspiracy, alleges that "[a]t no time during the conspiracy did any person apply for or obtain the necessary licenses from OFAC, located in the District of Columbia, to provide money or services to CHERIZIER, a sanctioned individual." With regard to ¶ 26b, the indictment does not identify any evasive transactions that occurred in the District of Columbia.

## ARGUMENT

### I. THE DISTRICT OF COLUMBIA IS NOT A PROPER VENUE FOR PROSECUTION OF THE CHARGED IEEPA CONSPIRACY

Venue is improper in this District because no essential conduct element of the charged IEEPA conspiracy offense took place here. The indictment does not allege that Richardson or any co-defendant or co-conspirator did anything in the District of Columbia or failed to perform an act where the law criminalizes inaction. The alleged failure of Richardson or any alleged co-conspirator to obtain an OFAC license in this District was a circumstance element or merely preparatory failure to act that does not satisfy constitutional venue requirements.

#### A. The Government Bears the Burden of Establishing That Venue Is Proper

A defendant may challenge a defect in an indictment, including a venue objection, by filing a pretrial motion to dismiss one or more counts of the indictment. *See* Fed. R. Crim. P. 12(b)(3)(B). When evaluating a motion to dismiss an indictment, a reviewing court "assumes the truth" of the indictment's factual allegations. *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015). As discussed above, Article III, § 2, cl. 3, the Sixth Amendment, and Fed. R. Crim. P.

18 all require prosecution of federal crimes in a district where the offense was committed. "The Government bears the burden of establishing by a preponderance of the evidence that venue is proper with respect to each count charged against the defendant." *United States v. Morgan*, 393 F.3d at 195.

### B. The Indictment Does Not Allege an Essential Conduct Element in This District

*United States v. Rodriguez-Moreno* mandates a two-step analysis of venue issues: identify the offense conduct and then determine where criminal acts are committed. 526 U.S. at 279. Venue is only proper in a district touched by a defendant's "conduct element," as opposed to a "circumstance element" which may involve conduct begun and completed by others and does not support venue. *Id.* at 280 n.4; *United States v. Mink,* 9 F.4th 590, 601-02 (8th Cir. 2021); *United States v. Bowens*, 224 F.3d 302, 310 (4th Cir. 2000); *United States v. Gamble,* 202 WL 2605829, at 4 (D.D.C. July 2, 2020) (circumstance elements "are not essential conduct elements that can establish venue").[1] The essential conduct requirement applies in conspiracy cases, where venue is proper wherever a co-conspirator committed an act in furtherance of the conspiracy, regardless of whether an overt act must be proved. *Abouammo,* 608 U.S. at 606 (citing *Whitfield v. United States*, 543 U.S. 209, 218 (2005)); *United States v. Magruder,* 126 F.4th 671, 679 (D.C. Cir. 2025).

More precisely, "essential conduct elements" describe actions proscribed by a criminal statute, while "circumstance elements" are "fact[s] that existed at the time" those actions are

[1] In this regard, *Rodriguez-Moreno* reaffirmed pre-existing law in this Circuit that mere effects of a defendant's actions do not establish venue when all underlying events occurred in other districts. *See United States v. White*, 887 F.2d 267, 272 (D.C. Cir. 1989) (venue for bribery lies only in a district in which the defendant committed unlawful acts, not where only the effects of the crime occur); *United States v. Swann*, 441 F.2d 1054, 1054–55 (D.C. Cir. 1971) (in case predating enactment of 18 U.S.C. § 1512(i), alleged tampering in Maryland with witness in

performed. *United States v. Auernheimer,* 748 F.3d 525, 532 (3d Cir. 2014); *United States v. Strain*, 396 F.3d 689, 694 (5th Cir. 2005) (defining "circumstance elements" as those that "do not involve any proscribed conduct by the accused"); *see also United States v. Holcombe,* 883 F.3d 12, 16 (2d Cir. 2018) ("venue turns on 'where physical *conduct* occurred, and not where criminal intent was formed") (citation omitted). "Failure to perform a required act could confer venue where a defendant should have performed that act when a statute penalizes inaction," but not where the defendant "was under no such preexisting duty — legal or otherwise." *Auernheimer,* 748 F.3d at 538. "For instance, if Congress made it a crime to jaywalk at 2:00 p.m., the "conduct element" would be 'jaywalking,' while the 'circumstance element' would be the time-of-day requirement. *United States v. Brennan,* 452 F. Supp. 3d 225, 234 (E.D. Pa. 2020).

"Circumstance elements" also include actions or failures to act which are merely "preparatory" to the underlying offense. "[P]reparatory conduct does not satisfy the first step of the venue inquiry because it is not the type of essential conduct that is required for the establishment of venue." *United States v. Mosby,* 143 F.4th at 280. *Mosby* held that venue for a mortgage fraud charge under 18 U.S.C. § 1014 was improper in a district where the defendant signed a fraudulent gift letter that was later submitted in another district. *Id. United States v. Sterling,* 860 F.3d 233 (4th Cir. 2017), held that venue was improper under 18 U.S.C. § 793(e) in the district where the defendant kept a classified document absent evidence that document was communicated, delivered, or transmitted in that district. *Id.* at , 243-44. *United States v. Ramirez* held that venue for mail fraud lies where an individual actually misuses the mails, not where an individual does not more than devise a scheme to defraud. 420 F.3d at 144. *United States v. Strain*

---

District of Columbia case did not establish venue in this District).

held that venue for harboring a fugitive under 18 U.S.C. § 1071 was improper in a district where the defendant had phone conversations and travelled but the actual harboring occurred in an adjacent district. 396 F.3d at 697. And one of the leading "merely preparatory" cases, *United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181 (2d Cir. 1989), found no venue under 21 U.S.C. § 331(a) in a district where defendants placed telephone orders and mailed confirmations to suppliers of adulterated apply juice concentrate but did not introduce adulterated food into interstate commerce. *Id.* at 1190. *See also United States v. Purcell,* 967 F.3d 159, 190 (2d Cir. 2020) (no venue for enticement to engage in unlawful sexual activity under 18 U.S.C. § 2422(a) in district where defendant engaged in preparatory acts that did not themselves constitute enticement); *United States v. Tzolov,* 624 F.3d 314, 319 (2d Cir. 2011) (no venue for securities fraud under 15 U.S.C. § 78aa in district where defendant boarded flight to travel to meetings where he made fraudulent statements). In each instance, preparatory conduct deemed to be a circumstance element, not an essential element, of the charged offense.

Here, the indictment does not allege that Richardson or any co-conspirator engaged in any conduct in the District of Columbia or failed to perform an act that the criminal provisions of IEEPA required to be performed here. The alleged failure to obtain an OFAC license was a circumstance element or preparatory conduct, not an essential conduct element.

### C. IEEPA Does Not Criminalize Failure to Obtain a OFAC License — It Criminalizes Engaging in Other Conduct Without Having Previously Obtained a License

For more than a century, the Supreme Court has sustained venue for crimes involving a person's failure to act — but only where the statute in question explicitly makes it a crime to fail to perform a specified act at a specified place. In one of the earliest of these "failure-to-act" cases,

*United States v. Lombardo,* 241 U.S. 73 (1916), a statute required that a person who managed a house of prostitution and utilized an alien woman file a statement about the woman with the Commissioner of General Immigration in the District of Columbia. The government obtained an indictment in Washington State for failing to file such a report, but the Court held that the venue was only proper in the District of Columbia, the location of the mandatory filing. Shortly afterward, in *Rumely v. McCarthy,* 250 U.S. 283 (1919), the defendant was prosecuted under the Trading with the Enemy Act of 1917 for failing to make a report to the Alien Property Custodian in the District of Columbia about certain property he possessed that belonged to the Imperial German government. Once again, venue was proper in this District because "the duty imposed by the statute to make report to the Alien Property Custodian involved the duty to make such report in the District of Columbia, and failure to make it was an offense against the United States committed in that District." *Id.* at 289. Similarly, in *Travis v. United States,* 364 U.S. 631 (1961), a union officer was charged in Colorado for making and filing false non-Communist affidavits, which were required to be on file with the National Labor Relations Board in the District of Columbia before the union could utilize the Board's procedures. The Court held that "[w]hen a place is explicitly designated where a paper must be filed, a prosecution for failure to file lies only at that place." *Id.* at 636. Venue lay only in the District of Columbia, because "[t]he locus of the offense has been carefully specified; and only the single act of having a false statement at a specified place is penalized." *Id.* at 637.

*Anderson v. United States,* 328 U.S. 699 (1946), and *Johnston v. United States*, 351 U.S. 215 (1956), further confirmed that venue for failure to act is only proper in the district where an act is required to be performed and non-performance is a crime. In *Anderson,* the defendant

received a notice from the draft board in Spokane (Eastern District of Washington) and then reported to Fort Lewis (Western District of Washington), where he refused to take the oath of induction unless vaccination regulations were waived. A grand jury in the Western District indicted him for that refusal. The Supreme Court found venue there to be proper, because the defendant's duty was to submit to induction and "[t]he place where this was required to be done was Fort Lewis and nowhere else." 328 U.S. at 706. Then in *Johnston*, the Court considered three defendants who were classified as conscientious objectors by their local draft boards but failed to report to perform civilian work in lieu of induction. The Court held that venue was only proper "in the district where the civilian work was to be performed." 351 U.S. at 220. Citing *Lombardo, Rumely,* and *Anderson,* the Court stated that it was "led to this conclusion by the general rule that where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime." *Id.*

Previous IEEPA cases in this District have cited these "failure to act" cases in upholding venue for IEEPA charges because the failure to secure a required license is an "essential conduct element." *United States v. Jin*, 2025 WL 2409749, at **20-21 (D.D.C. Aug. 19, 2025); *United States v. Hassanshahi*, 185 F. Supp. 3d 55, 57–58 (D.D.C. 2016); *United States v. Montgomery*, 441 F. Supp. 2d 58, 60 (D.D.C. 2006). Respectfully, those decisions incorrectly treated IEEPA (under which failure to obtain a license not by itself a crime) with cases "where the crime charged is a failure to do a legally required act [and] the place fixed for its performance fixes the situs of the crime." *Johnston,* 351 U.S. at 220. Failure to apply for a license when no statute makes failure to apply a crime is a circumstance element, not an essential conduct element as required by *Rodriguez-Moreno*. No law requires any person to obtain an OFAC license, in the way that other

statutes required reporting to a location to perform civilian work, taking an oath submitted to the draft, or filing a statement required of all brothel managers. Rather, under IEEPA and the OFAC regulations, the crime is willfully conducting a transaction at a time when a U.S. person has the status of lacking a license — that is, that the person elected not to go through the *voluntary* process to secure an OFAC license. But having the status of not being a license-holder is very different from failing to obtain a license that the law commands a person to obtain.

Nor does *Invs. Funding Corp. of New York v. Jones*, 495 F.2d 1000 (D.C. Cir. 1974), also cited in prior IEEPA cases, support venue in this District. In that case, the D.C. Circuit addressed a specialized venue provision in the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and held that in a civil action for injunctive relief to compel two corporate entities to file reports required under §§ 13(a) and 15(d) of that act, "venue for failure to timely file a report," *id*. at 1022, was proper in this District because "late filing, as much as a failure to file, occurs within the district where the report is finally delivered to the designated agency or official." *Id.* Because criminal charges for late filing could be brought in this District, and civil enforcement actions could be brought where criminal charges could be brought, "venue for civil enforcement actions of the [Securities and Exchange] Commission, involving reports required to be filed in the District of Columbia, is here." *Id.* at 1003. In *United States v. Jin,* the court relied on *Invs. Funding Corp. of New York*, analogizing that "[j]ust as a public company offering securities has a duty to file certain reports with the SEC, so too an exporter conducting transactions with [sanctioned entities in] North Korea has a duty to seek a license from OFAC. In both cases, the failure to perform the duty is sufficient to support venue in the place for performance: the District of Columbia." 2025 WL 2409749, at *20. *See also United States v. Montgomery,* 441 F.Supp.2d at 61 (citing *Jones* in

support of conclusion that "when an individual has a duty to act in some way and does not, prosecution of the failure to act is properly in the district in which the omission occurred").

But IEEPA is materially different from the securities law provisions involved in *Invs. Funding Corp. of New York*. A public company *must* file certain periodic reports with the SEC under §§ 13(a) and 15(a) of the Securities Act of 1934, 15 U.S.C. §§ 78m(a) and 78o(a). Willfully violating any provision of the Act — including willfully failing to file the reports required by §§ 13(a) and 15(a) — is a crime under § 32(a) of the Act, 15 U.S.C. § 78ff(a). That statutory scheme parallels those involved in cases such as *Johnston, Anderson,* and *Lombardo*. But IEEPA does not impose a mandatory "duty to seek a license from OFAC" or "duty to act in some way," as *Jin* and *Montgomery* asserted. Notwithstanding the indictment's use of the terms "required license" in ¶ 26a and "necessary licenses" in § 29kk, nothing in IEEPA mandates that a person *must* obtain an OFAC license in the District of Columbia or else face criminal prosecution. IEEPA does not criminalize the failure to do any required act, including the failure to obtain an OFAC license. It only criminalizes other actions taken by a person who has not obtained such a license.

For these reasons, under controlling Supreme Court and D.C. Circuit precedent, the non-mandatory, non-criminal failure to obtain an OFAC license is a circumstance element, not an essential conduct element that establishes venue in this District.

### D. A Defendant's Status as a Person Lacking an OFAC License Is a Circumstance Element That Does Not Create Venue

The Supreme Court and the D.C. Circuit have never held an action or inaction that is not criminal by itself, but creates a status that may make subsequent conduct a violation of the criminal law, is an essential conduct element that creates venue. To the contrary, courts have consistently held that venue is not proper in a district where the only conduct was circumstantial or preparatory

activity that became an element an offense that the defendant completed by engaging in essential conduct in another district. Examples include:

- 18 U.S.C. § 922(g)(1) makes it possession of a firearm or ammunition in and affecting commerce unlawful by a person who became a prohibited person by virtue of being convicted of certain crimes, § 922(g)(1); adjudicated as a mental defective or committed to a mental institution, § 922(g)(4); dishonorably discharged from the armed forces, § 922(g)(6); subjected to certain restraining orders, § 922(g)(8); or convicted of a misdemeanor crime of domestic violence. § 922(g)(9). Possession is the conduct element; the status that makes possession criminal is the circumstance element. Venue for a § 922(g)(1) offense is not proper in a district where the defendant was convicted of a predicate crime or obtained another status that made him or her a prohibited person but did not possess a firearm or ammunition. "Only where [a defendant] actually possessed a firearm would venue be proper." *United States v. Lanoue,* 137 F.3d 656, 661 (1st Cir. 1998) (cited in *Cabrales,* 524 U.S. at 8 n.2).
- 8 U.S.C. § 1326(a) provides that an alien who was previously deported or removed and then "enters, attempts to enter, or is at any time found in, the United States" without meeting specified conditions is guilty of a crime. Entering, attempting to enter, or being found is the conduct element; prior deportation or removal is the circumstance element. Venue for this offense is not proper in a district where the only thing that happened to a defendant was being deported. Venue is proper only in a district where the defendant entered, attempted to enter, or was found. *United States v. Ayon-Brito,* 981 F.3d 265, 271 (4th Cir. 2020); *United States v. Hernandez*, 189 F.3d 785, 791 (9th Cir. 1999).

- 18 U.S.C. § 1071 prohibits "harbor[ing] or conceal[ing] any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person." Harboring or concealing is the conduct element; the issuance of a warrant is a circumstance element. Venue for a § 1071 offense is not proper in a district merely because a warrant was issued there. Venue is proper only where the harboring or concealing takes place. *United States v. Bowens,* 224 F.3d at 310-11 (issuance of a warrant "is merely a circumstance element"); *United States v. S* F.3d at 694 (phone calls and travel are not essential conduct elements).
- 26 U.S.C. §§ 5861(d) and 5845 make it unlawful to possess a specified firearm that is not registered in the National Firearms and Transfer Record. Possession is the conduct element; failure to register is the circumstance element. Venue is only proper where the defendant possesses such a firearm. *United States v. Toomey,* 404 F. Supp. 1377, 1380 (S.D.N.Y. 1975).

These cases are "comparable to the crime of driving an automobile without a license, in which the place of committing the act of driving the automobile, rather than the place of obtaining the license, determines the venue." *United States v. Bowman,* 137 F. Supp 385, 387 (D.D.C. 1957). In each case, the defendant can be prosecuted only in a district where he or she does something (the essential conduct element), not the district where he or she obtained or failed to obtain a particular status (a circumstance element).

Many other federal criminal statutes forbid persons from performing specified acts without obtaining a federal license, but do not explicitly require defendants to perform a specified act. *See, e.g.,* 18 U.S.C. § 922(a)(1) (engaging in firearms dealing without federal license); 18 U.S.C. § 842 (manufacturing, importing, or dealing in explosive materials without a federal license); 21 U.S.C. §§ 331, 333 (manufacturing and distributing drugs without a license); 21 U.S.C. § 841 (manufacturing or distributing controlled substances without a DEA registration); 26 U.S.C. §§ 5601, 5691 (operating a distillery or dealing in tobacco products without federal permit); 47 U.S.C. §§ 301, 501 (operating transmitting equipment without an FCC license); 49 U.S.C. § 46306 (operating aircraft or serving as airman without proper certification). These circumstance elements are irrelevant for venue purposes. *United States v. Fortenberry,* 89 F.4th at 792. It would be absurd to suggest that venue for an offense involving unlicensed conduct would be proper in a district where the only connection is the location of the federal licensing authority, when the essential conduct is, say, firearms dealing in Idaho, manufacturing controlled substances in Tennessee, or operating radio transmitting equipment in Minnesota. The Constitution forbids the government from trying a defendant far from the place of the alleged offense on this basis.

For these additional reasons, failure to obtain a license from OFAC is not an essential conduct element and does not establish venue for an IEEPA conspiracy charge in the District of Columbia.

### E. Recent Supreme Court Decisions Confirm That Prosecuting Richardson in This District Is Improper

*Nichols v. United States,* 578 U.S. 104 (2016), and *Abouammo v. United States,* 146 S. Ct. 1571 (2026), further demonstrate why the District of Columbia is not a proper venue for prosecuting defendant Richardson. In *Nichols,* the defendant was charged in the District of Kansas

with violating the Sex Offender Registration and Notification Act ("SORNA"), which makes it a federal crime for certain sex offenders to "knowingly fai[l] to register or update a registration," 18 U.S.C. § 2250(a)(3), and requires that offenders who move to a different State to provided certain information to their new jurisdiction. Once Nichols moved to the Philippines, he no longer fell within the class of persons required to register in Kansas. The Supreme Court held that Nichols could not be prosecuted in Kansas for failing to update registration when he moved out of the state to the Philippines, a non-SORNA jurisdiction, because he was no longer a resident of Kansas and was not required to do anything there. 578 U.S. at 108-09.

In *Abouammo*, the defendant's conduct while working for Twitter in San Francisco led to an investigation by FBI agents based there. After the defendant moved to Seattle, the agents flew there to interview him. During the interview, he created a fake document and emailed it to the agents. The government charged Abouammo under 18 U.S.C. § 1519 in the Northern District of California and a jury convicted him. 608 U.S. at 601-02. Rejecting the claim that venue was proper in a district where the investigation the defendant intended to obstruct is ongoing or contemplated, the Supreme Court unanimously reversed the conviction.

The Court reiterated the importance of a defendant's venue rights under Article III and the Sixth Amendment, observing that

> Venue in criminal cases mattered more than might be supposed to the Nation's Founders. Prior to the Revolution, Parliament enacted measures to try allegedly treasonous colonists in England, rather than in their home colonies. The legislation was so roundly despised as to make it into the Declaration of Independence. Among the "injuries and usurpations" listed there was the practice of "transporting us beyond Seas to be tried for pretended offences." Declaration of Independence 21; see *Smith v. United States*, 599 U.S. 236, 246-247 (2023). After the Revolution, of course, the Founders no longer had to fear transportation overseas. But they retained strong feelings about "the unfairness and hardship involved when an

> accused is prosecuted in a remote place." *United States v. Cores*, 356 U.S. 405, 407 (1958).

608 U.S. at 602.

To determine an offense's "essential conduct elements," courts "'must initially identify the conduct constituting the offense'" — the things a defendant must do to violate the statute at issue." *id.* at 602-03 (quoting *Rodriguexz-Moreno*, 526 U.S. at 279), and "then the court must ascertain the 'location' of those 'criminal acts' — the place where their 'commission' occurred. *Id*. at 603. The focus, at all times, is on where the defendant acted. Regardless of whether proscribed acts take place in one district or several, "the inquiry remains one into the place of the crime's conduct elements — the acts that the prosecution must prove to secure a conviction." *Id.* (footnote omitted). "Under that framework, the venue for trying a § 1519 offense must be where a defendant's falsification happened — which here was Seattle." *Id.* at 604. "Because the only proscribed conduct is falsification, venue must be where falsification occurred." *Id.* So, "whatever obstructive effects Abouammo's false invoice may have had in northern California, they were not elements of his crime." *Id.* at 605.

Under the Supreme Court's reasoning in *Nichols* and *Abouammo,* failure to secure an OFAC license cannot be an "essential conduct element" of an IEEPA offense or an overt act in a conspiracy to violate IEEPA. Title 50 U.S.C. § 1705(b) and the underlying OFAC regulations related to Cherizier do not require anyone to do anything affirmatively in the District of Columbia. While the indictment alleges in ¶ 7 and ¶ 29kk that at no time during the conspiracy did any conspirator apply for or obtain a license to provide money or services to Cherizier from OFAC in the District of Columbia, that inaction was not in and of itself an "essential conduct element." Rather, the allegedly unlawful conduct was doing other things, in other judicial districts, without

previously having obtained an OFAC license. Beyond ¶ 7 and ¶ 29kk, the indictment does not allege that Richardson (a resident of North Carolina), Cherizier (a resident of Haiti), or any unidentified co-conspirator (in New York, Massachusetts, North Carolina, or Haiti) lived in, traveled to, or did anything in the District of Columbia.

Charging a crime in a district where a defendant did not do anything and was under no obligation to do anything is precisely what the Constitution forbids. To repeat, IEEPA does not impose any criminal liability for mere failure to do a legally required act. Rather, it imposes punishment for something a person did — either causing the provision of goods, funds, and services without an OFAC license (¶ 26a), or engaging in transactions to evade and have the purpose of evading OFAC sanctions (¶ 26b). Venue is proper in any district where a conspirator did something, or was required to do something, as part of an agreement to violate the law. When the government proceeds under a statute that does not in and of itself criminalize failure to act, venue for such prosecutions, whether for the substantive offense or conspiracy, is only proper in a district where an essential conduct element of the crime took place. Just as Nichols could not be prosecuted in the District of Kansas and Abouammo could not be prosecuted in the Northern District of California when they did nothing and were not required to do anything in those districts, Richardson cannot be prosecuted in the District of Columbia when he did nothing here and was not required to do anything here.

The government could readily have filed this case in New York, Massachusetts, or North Carolina, where conspirators allegedly lived and committed acts in furtherance of the conspiracy. Defendant Richardson, a truck driver represented by court-appointed counsel, should not have to spend weeks far from his home just because proceeding in this District is convenient for the

government. The Court should dismiss the indictment without prejudice for improper venue.

Respectfully submitted,

/s/ Stuart A. Berman
Stuart A. Berman (Bar No. 975135)
Lerch, Early & Brewer, Chtd.
7600 Wisconsin Avenue
Suite 700
Bethesda, MD 20814
(301) 657-0729
saberman@lerchearly.com
*Counsel for Defendant Bazile Richardson*

Dated: October 5, 2026